THOMAS SALTER and others v. JONATHAN D. WILLIAMSON and WILLIAM D. WILLIAMSON.

The jurisdiction of a court of chancery over the settlement of accounts of executors and administrators, is too well established at this day to admit of question.

The authority conferred by statute upon the orphan's court, in relation to the settlement of accounts of executors and administrators, was only a cumulative remedy afforded to parties, and was never intended to deprive the court of chancery of its jurisdiction.

The court of chancery and the orphan's court have on this subject a concurrent jurisdiction.

Where there are no special reasons for going into equity, the orphan's court is the proper tribunal, and should be selected by all parties for settling the accounts of executors and administrators.

The fact that an executor or administrator has exhibited his account in the orphan's court, and that steps have been taken towards a final settlement of the account in that court, will not deprive the court of chancery of its jurisdiction over the account. Until the final decree of the orphan's court, there is no legal impediment to prevent the court of chancery taking cognizance of the case.

But where an account has been exhibited in the orphan's court, and especially if considerable advance has been made towards the adjustment of the account, a court of equity will not interfere unless there exist some substantial reason for invoking its aid.

THE bill states, that Matthias Williamson, late of the county of Essex, was in his life time, and at the time of his death,

seized and possessed of considerable personal estate: that the said Matthias Williamson died intestate, on or about the 29th day of March, 1836, leaving the complainants and the defendants, his children and only heirs at law and next of kin, him surviving. That soon after the death of the said intestate, C. L. W., one of the complainants, and J. D. W., one of the defendants, obtained grant of letters of administration from the surrogate of the county of Essex, upon the estate of said intestate ; and that at the term of June, 1837, the orphan's court of the county of Essex revoked the letters of administration granted to the said C. L. W., by means whereof the sole administration of the estate of the said intestate devolved upon the said J. D. W. ; who by virtue of the said letters of administration possessed himself of the personal estate and effects of the said intestate, greatly more than sufficient to satisfy his just debts and funeral expenses. That the said W. D. W. was advanced by the said intestate in his life time to a very considerable amount, and greatly exceeding the whole personal estate of the said intestate at the time of his death ; and that the said W. D. W. was indebted to the said intestate at the time of his death, beyond his proportion of the intestate's personal property as one of the next of kin, and that the intestate had paid large sums of money for the said W. D. W. which remained due to the intestate at the time of his death. That in the inferior court of common pleas of the county of Essex, at the term of June, 1818, the intestate recovered a judgment against the said W. D. W. for two thousand five hundred dollars, which still remains unpaid and unsatisfied, and which became, at the death of the intestate, a lien upon the portion of the real estate of the said intestate to which the said W. D. W. became entitled as one of the heirs at law of the said intestate. That in the year 1837 the said W. D. W. sold and conveyed to the said J. D. W. all his right, title and interest in the real and personal estate of the said intestate, for a sum very inadequate to the value of one seventh of the real and personal estate of the said intestate, the proportion to which the said W. D. W. was entitled ; and that the said J. D. W., at the

62

time he made the said purchase and accepted the conveyance and assignment of the said real and personal estate, had full knowledge of the existence of the said judgment against the said W. D. W. and the lien of said judgment on the said real estate, and of all the other facts and circumstances above set forth. That as soon as the knowledge of the said purchase by J. D. W. from W. D. W. came to the knowledge of the complainants, they by their attorney applied to the said J. D. W. and earnestly solicited him, as the administrator of the said intestate, to cause such legal proceedings to be instituted on the said judgment against the said W. D. W. as might be necessary to recover from him the amount due from him to the intestate, or else that the said J. D. W., having purchased all the interest of the said W. D. W. in and to the real and personal estate of the intestate, would account to the complainants in the amount due from the said W. D. W. to the intestate, at least to the amount of the value of such interest so purchased, deducting his own share thereof: that instead of so doing, the said J. D. W. has taken no measures since the death of the said intestate, by execution or scire facias, to enforce the payment of the money due on said judgment, or the lien created thereby, but since the said purchase by the said J. D. W. of the said W. D. W., at the term of September, 1837, of the supreme court of New-Jersey, the said J. D. W., as administrator as aforesaid, caused to be instituted against the said W. D. W. an action of debt upon the said judgment in favor of the said intestate, against the said W. D. W., and such proceedings were thereupon had that the said cause is pending at issue and noticed for trial at the next Essex circuit; the object of which proceedings on the said judgment, the complainants are advised, is to relieve the said J. D. W. and the estate purchased by him from the said W. D. W. from being answerable for said judgment. The bill insists that the judgment recovered by the intestate, as aforesaid, against the said W. D. W. having become upon the death of the said intestate, a lien upon the real estate of said intestate which descended to the said W. D. W., the said judgment should be established and declared to

[Salter et al. v. Williamson, adm'r.]

be still a subsisting lien thereon; and in case the said lien has been lost or destroyed, that it has been through the gross negligence of the said J. D. W. and by collusion with the said W. D. W., and that the said J. D. W. ought to be charged with the amount due on said judgment, or else that the proceeds arising from the sale of the real estate, advertised to be sold as hereafter stated, which descended from the intestate to the said W. D. W. as aforesaid, may be declared to be held in trust to satisfy what is due on said judgment.

The bill further charges, that the said J. D. W., as one of the heirs at law of the said intestate, applied to one of the justices of the supreme court of this state for the appointment of commissioners to divide the real estate of the said intestate; that such commissioners were accordingly appointed on the 17th of February, 1838; that a report has been made by said commissioners to the said justice that the said real estate could not be divided, whereupon the said justice made an order to sell the same at public auction; and that the said commissioners, by virtue of said order, advertised the same for sale, and that the said sale is advertised to be held on the 28th day of July instant. That the real estate of the intestate consists of various dwelling-houses and farms, and might be sold to great advantage if sold on reasonable and accommodating terms and credit, but the complainants believe that if the said real estate is sold in the present state of depressed prices and pecuniary embarrassments of the country, it must be sold at a great sacrifice; and that the complainants, or most of them, have not the means of becoming purchasers themselves of any considerable part of the said real estate. That the order for the sale of the said real estate, herein before referred to, was made in pursuance of an act of the legislature of the state of New-Jersey, entitled, "An act supplementary to the act, entitled, an act for the more easy partition of lands held by coparceners, joint tenants and tenants in common, and the act entitled, an act to ascertain the power and authority of the ordinary and his surrogates, to regulate the jurisdiction of the prerogative court, and to establish an orphan's court in the

several counties of this state," passed the 7th day of February, 1816; by the fourth section of which act it is enacted, That no sale or conveyance of any tract or tracts of land or real estate made by virtue of this act, shall impair or in any wise affect the rights and interest of any person or persons therein, other than the persons being or claiming to be coparceners, joint tenants or tenants in common in the same. That although the complainants T. S. and F. B., in right of their respective wives, are tenants in common with others in the real estate so advertised to be sold, yet the complainants are advised and insist that the estates and interests of S. H. S. and M. B., the wives of the said T. S. and F. B. respectively, are not liable to be sold by the said commissioners and converted into personal property, against their will, and that they cannot be deprived of their inheritance without their consent, which they have not given and now refuse to give; and that their rights are also protected by the sixth section of an act of the legislature of the state of New-Jersey, entitled, "An act granting relief in certain cases against collusive judgments and wrongful alienations of land," passed the 2d day of March, 1798. That the said J. D. W. and the said commissioners, by virtue of the order for sale made as aforesaid, are proceeding to sell the said real estate, and will sell the same unless restrained by this court; and insists that no sale of the said real estate ought to be made without saving the rights and estates of S. H. S. and M. B. in and to the real estate descended to them from their father, and without first deciding whether the judgment recovered by the intestate against the said W. D. W. is or is not a subsisting lien on the real estate of the said intestate descended to the said W. D. W. as aforesaid, and how the money due on said judgment should be paid and satisfied. That since the death of the intestate the said J. D. W. has been in the receipt of the rents and profits of the whole or a very considerable part of the real estate whereof the said intestate died seized, and has never accounted to the complainants therefor, and that he has also the title deeds of the said estate, which the complainants pray he may be directed to produce. Prayer that the said J. D.

[Salter et al. v. Williamson, adm'r.]

W. and the said commissioners may be restrained by injunction from selling any part of the said real estate until the further order of the court: that the judgment recovered by the intestate in his life time against the said W. D. W. may be decreed to be a lien on the share of the real estate of the said intestate which upon his death descended to the said W. D. W., or that the said judgment may be satisfied out of the proceeds of the sale thereof, or that the said J. D. W. may be charged with the amount due on said judgment : that the estates and interests of S. H. S. and M. B. may be established, and decreed not liable to be sold by the said commissioners : that partition be made of all the real estate whereof the said intestate died seized, among his children and heirs at law, according to the practice of this court, and all necessary conveyances be executed for carrying such partition into effect : that an account may be taken of the rents and profits of the said real estate which have been received by the said J. D. W., or might have been received by him without his wilful default, and payment decreed of what shall be found due from him on such account to the complainants, according to their respective shares and interests in the same ; and that the complainants may have such other relief, &c.

Upon filing the bill an injunction issued, pursuant to the prayer of the bill.

Separate answers were filed by the defendants. The answer of J. D. W. admits that M. W. died intestate, at the time stated in the bill of complaint, seized and possessed of considerable real and personal estate, and leaving the complainants and defendants his children and only heirs at law and next of kin him surviving : that administration upon the estate of the intestate was granted by the surrogate of the county of Essex to this defendant and C. L. W.: that the letters to the said C. L. W. were subsequently revoked, and the sole administration vested in this defendant : that upon the settlement of the accounts of the said C. L. W. as administrator, there was found in his hands a balance of two thousand three hundred and fifty-nine dollars and sixty-one cents, which exceeds his distributive share of the personal estate

of the intestate, and which, although demanded, he refused to pay over to this defendant. That this defendant exhibited his accounts as administrator as aforesaid, for settlement, in the orphan's court of the county of Essex, and exceptions being filed thereto, it was referred to auditors, who reported a balance in this defendant's hands of twelve thousand four hundred and sixty-five dollars and sixty-five cents; from which one thousand six hundred and fifty dollars ought to be deducted, that amount having been twice charged against this defendant by the auditors in their report; which leaves in this defendant's hands the sum of ten thousand eight hundred and fifteen dollars and sixty-five cents, to be distributed to the next of kin of the intestate, according to law, to one seventh of which this defendant is entitled as one of the next of kin. Admits the indebtedness of W. D. W. to the intestate, as stated in the complainants' bill, and that the amount due from the said W. D. W. to the intestate at his death exceeded the share of the said W. D. W. in the intestate's estate : that a judgment was recovered by the intestate in his life time against the said W. D. W. for two thousand five hundred dollars debt: that this defendant was advised, that inasmuch as the said judgment was recovered in the common pleas of Essex county, the same was not a lien upon that part of the real estate of the intestate which descended to the said W. D. W. which was not situated within the said county; and that, by the advice of counsel, he caused a suit to be instituted in the supreme court upon said judgment, in order to create a lien upon the real estate of the said W. D. W. not within the said county, which is still pending. Denies that the said suit was instituted to relieve the share of the said W. D. W. from the lien of said judgment. Admits the sale by W. D. W. of his share of the real and personal estate of the intestate to this defendant, on or about the 28th day of July, 1837, for which this defendant gave his bond for five thousand dollars, conditioned for the payment to the said W. D. W. of twenty-five dollars per month during his life, and on the death of the said W. D. W. fifteen hundred dollars, if such balance remained in the hands of this defendant, to be di-

vided among the children of the said **W. D. W.**; which conside-ration was more than adequate to the value of said share; but that, owing to dissatisfaction expressed by some of the complain-ants in regard to the said purchase, this defendant, on the 18th day of June, 1838, executed to the said **W. D. W.** a reconvey-ance of the said share, upon which this defendant's bond, given for the purchase thereof, was delivered up and cancelled. Denies that the said purchase was made with the view of relieving the said share from the lien of said judgment, which lien this de-fendant has always admitted and still admits. That the said commissioners can only sell the said share subject to the lien of the said judgment; and that the said commissioners would be bound to pay out of the proceeds of the sale of said share, the amount due on said judgment, to the administrator of the said intestate, to be by him distributed among the next of kin, or that the said commissioners would become trustees for the said next of kin, and be bound to pay them their respective shares of the said proceeds. Admits the application by this defendant, as one of the heirs at law of the said intestate, and as a tenant in common of the real estate whereof he died seized, to have parti-tion made thereof, and insists upon the right of this defendant to have such partition or sale made, and that the consent of the said **S. H. S.** and **M. B.** is not necessary to the making such par-tition or sale, and that the said commissioners are authorized by law to sell the said real estate, and to account to the said **S. H. S.** and **M. B.** and their respective husbands, for their respective portions of the proceeds of the said sale. Denies that this de-fendant has a large portion of the personal estate of the said in-testate, or of the rents and profits of his real estate accrued since his death, in his hands unaccounted for.

The answer of **W. D. W.**, the other defendant, admits that he and the said intestate had large dealings in the intestate's life-time; that the intestate recovered the judgment for two thousand five hundred dollars, specified in the bill of complaint, but that upon a fair settlement of their accounts it would appear that the said judgment was satisfied and a balance due to this defendant;

Denies that any advancement was made to this defendant by the intestate in his life time, but insists that all their dealings were regular business transactions, and that the whole claim of the intestate against this defendant has been paid and satisfied. Admits the sale and conveyance by this defendant of his share in the personal and real estate of the intestate, to the said J. D. W., but insists that the same was bona fide and for a valuable consideration, and that the said share has since been reconveyed to this defendant, as stated in the answer of the said J. D. W.

The cause was heard upon the bill and answers; the only question submitted for the consideration of the court, being, whether the defendant, as administrator, could, under the circumstances of the case, be called upon to account in this court.

*E. Vanarsdale,* for complainants.

*O. S. Halsted,* for the administrator, one of the defendants. The other defendant consenting that a reference be made to a master to settle the accounts.

Cases cited by the complainant's counsel. *Simson* v. *Hart,* 14 *John. R.* 77; 5 *John. Rep.* 167–8; 4 *Griffith's Law Reg.* 1258; *Halsted's Dig.* 296; 1 *Eq. Cas. Abridged,* 12, *s.* 9; *Dulwich College* v. *Johnson,* 2 *Vernon,* 49; 1 *Southard,* 191; 1 *Maddock,* 584; *Jeremy's Eq.* 504; 9 *Wheaton,* 542; *Manuscript Opinions of chancellor Williamson* in *Garrabrant* v. *Lawrence,* and *Burtis et al.* v. *Adm'rs of Hopkins,* and of chancellor *Vroom* in *King* v. *Ex'rs of Berry.*

THE CHANCELLOR. Matthias Williamson died in March, 1836, intestate, possessed of a considerable personal and real estate, and letters of administration upon that estate were granted by the surrogate of the county of Essex, to Charles L. Williamson and Jonathan D. Williamson, two of his sons. Subsequently, the letters granted to Charles were revoked, and the sole administration devolved upon Jonathan D. Williamson.

[Salter et al. v. Williamson, adm'r.]

The intestate left seven children, three sons and four daughters. This bill is filed by five of the children, as the heirs at law and next of kin of the intestate, against the administrator, for a settlement of the accounts of the estate and for distribution; and William D. Williamson, another of the sons, not joining in the action with the complainants, is made a defendant.    To this bill the administrator has put in his answer; and the sole question to be settled at this time is, whether the court will order the account to be taken.

The jurisdiction of a court of chancery over the settlement of accounts of executors and administrators, is too well established at this day to admit of question.    In many cases it is necessary and important that this power should be exercised.    The authority conferred by statute upon the orphan's court on this subject, was only a cumulative remedy afforded to parties, and was never intended to deprive this court of its jurisdiction.    There are no words in the act showing any such intention in the legislature. This court and the orphan's court have on this subject a concurrent jurisdiction, and the object of vesting this power on settlement of accounts of executors and administrators in the orphan's court, no doubt, was, to afford in all ordinary cases a more easy, expeditious, and less expensive mode of closing up estates. Where there are no special reasons for going into equity, the orphan's court is the proper tribunal, and should be selected by all parties for settling the accounts of executors and administrators. That there are cases constantly occurring, where the limited authority of that court is entirely inadequate to reach the many difficulties that arise on the settlement of estates, is within the experience of all.    This court has, therefore, always maintained its power to take cognizance of cases of this character, to finally settle the accounts of executors and administrators, and to order distribution among those entitled.    The manuscript opinion of chancellor Williamson, in the case of *Burtis and others* v. *The Adm'rs of Hopkins*, fully establishes this view of the question, and the same doctrine is recognized by chancellor Vroom, in the case of *King* v. *The Ex'rs of Berry*.    Indeed, cases of this

63

character are continually arising in the court. Even where a decree has finally passed the orphan's court, it may be impeached in this court on the ground of fraud.

But I do not suppose it was the serious intention of the defendant's counsel to dispute this proposition, but rather to object to an interference in this particular case, after the progress that has been made in the orphan's court. The administrator presented his accounts for settlement in that court; they were referred to auditors, who, after a tedious examination, made a report on them, and that report is now standing upon exceptions filed by the complainants or some of them. Until the *final* decree of the orphan's court, there is no *legal* impediment in the way of this court taking cognizance of the case, if they think proper so to do. If the mere fact that an administrator has selected the orphan's court, and taken steps there towards getting his accounts adjusted, is to deprive this court of all power and authority in the case, then it must resolve itself into a mere scramble for jurisdiction. This cannot be the test, but as the jurisdiction of the two courts is concurrent, if one of the parties has resorted to the orphan's court, and especially if considerable advance (as in this case) towards the adjustment of the accounts has been made, then, I think, this court should not interfere unless there exist some substantial reason for invoking the aid of a court of equity. It would be a great hardship, after accounts are near being closed, perhaps much time and trouble expended in their adjustment, to allow a party at his mere pleasure to transfer the jurisdiction from that court to this. The only true question, then, in this case is, have the complainants laid a proper foundation for coming into this court?

After a careful examination of the bill and answer, and reflecting upon the situation in which these parties are placed, I have come to the conclusion that there are in this case good reasons for continuing the cause in this court. With the limited powers of the orphan's court, it would be extremely difficult, if not impossible, to adjust the many questions that arise respecting this estate. The estate itself is large, the inventory amounting

[Salter et al. v. Williamson, adm'r.]

to upwards of seventy thousand dollars. All the members of this family, except the administrator, desire the accounts settled here; for although William D. Williamson, one of the brothers, was made a defendant, yet on the hearing he by his counsel joined with the complainants in this wish. There are many charges in the bill, as to which the complainants are entitled to a discovery from the administrator. The administrator was the confidential agent of the intestate in his life time, was in the habit of receiving money for him, transacted much of his business, and was in fact in many instances the only person who knew the true situation of the intestate's business. He has conflicting accounts with the estate, and seeks compensation for his agency, and is so interwoven with it as to render a disclosure on his part indispensable. The bill also charges, that advancements were made by the intestate to his children in his life time, and among the rest to the administrator, and that sundry checks, which the administrator insists are barred by the statute of limitations, were advancements made to him, and that the statute does not apply to a case of that character. Nor do I think it for the interest of the administrator that the cause should be dismissed from this court. He is interested to make disclosures showing the true state of the accounts between him and his father; he should desire this for the sake of giving to his brothers and sisters that reasonable satisfaction which they are entitled to. The answer has, I make no doubt, already removed several wrong impressions. So far as the accounts have undergone investigation before auditors, the labor will not be entirely lost, as it cannot fail to expedite the examination before the master.

Let a decree be taken in the usual form, referring the accounts to a master.