## In re estate of WICKO SINOVCIC, deceased.

[Submitted March 25th, 1912.  Decided June 20th, 1912.]

1. The consul-general of Austria-Hungary has the right to join· in an appeal from a surrogate's order improperly granting administration ,upon a decedent's estate to decedent's cousin, where both the decedent and his next of kin, who is his father, are citizens of that country.

2. Rules 1 and 2 of the orphans court made by the Ordinary pursuant to section 4 of the Orphans Court act (*P. L. 1898 p. 788*), relating to the application for administration, renunciation, request, and proof of notice, are as binding as the statute, must be complied with. and a valid grant of administration cannot be made without such compliance.

3. Evidence examined, and *held*, insufficient to support the contention that the next of kin had ratified the appointment of decedent's cousin as administrator.

4. The next of kin being a foreigner, living in Austria, letters of administration upon decedent's estate should be granted to the consul-general, conformably with the statutes of this state.

On appeal from a decree of the prerogative court affirming a decree of the orphans court of Camden county, wherein Judge Joline delivered the following opinion:

Wicko Sinovcic, a citizen of Austria-Hungary, died intestate in Camden, in this state, on the 11th day of February, 1909. His next of kin was his father, Jeric (or Jerolimo) Sinovcic, residing in Solta, Austria. In this country his nearest relative was Anton Clarich, a cousin. Upon the request of this cousin, who had a letter from the·father which, it is claimed, authorized him to act, Gasper J. Herzich, no application having previously been made by anyone, applied to the surrogate of Camden county, on August 16th, 1909, for letters of administration upon the estate of said decedent, and they were issued upon the same day. From the order granting these letters this appeal is taken by Jerolimo Sinovcic, the father of Wicko, and by Alexander de Nuber, "Imperial and Royal Austro-Hungarian Consul General."

The·right of the latter to appeal is based upon article 15 of the. consular convention between the United States of America and

Austria-Hungary, concluded July 11th, 1870, and proclaimed June 29th, 1871, and upon article 9 of the Treaty of Friendship, Commerce and Navigation between the United States and the Argentine Republic, signed July 27th, 1853, and proclaimed April 9th, 1855.

The former declares that, among others, consuls-general shall enjoy in the two countries all the liberties, prerogatives, immunities and privileges granted to functionaries of the same class of the most favored nation.

The latter declares that

"if any citizen of either of the two contracting parties shall die without will or testament, in any of the territories of the other, the consul-general or consul of the nation to which the deceased belonged, or the representative of such consul-general or consul, in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs."

It appears that on March 30th, 1909, an *exequatur* was issued by the department of state of the United States of America to the said Alexander de Nuber, as consul-general of Austria-Hungary, at New York.

I think that the said consul-general has the right to intervene in this proceeding. The fifteenth article of the Austria-Hungary treaty confers upon him the rights enumerated in the ninth article of the Argentine Republic treaty, and, among others, the right to intervene conformably with the laws of the country, for the benefit of creditors and legal heirs, in the administration of the estate of a decedent, a citizen of Austria-Hungary, dying without will or testament in this country. It cannot be successfully urged that this does not apply to the grant of letters of administration (*In re estate of Freccia, deceased. 27 N. J. L. J. (No. 12) 367*), and I think it should apply as well to an appeal from an alleged improper grant of such letters. In any event, the father joins in the appeal.

The question then arises, was the grant of letters to Gasper J. Herzich legal?

The authority of the surrogate is found in the twenty-eighth section of the Orphans Court act, which is as follows:

In re Estate of Wicko Sinovcic.    *80 Eq.*

"Whenever any person has died, or shall die, intestate, within this state, and has left, or shall leave, no relations justly entitled to the administration of his personal estate, or if the next of kin of any such intestate has not claimed, or shall not claim, the administration within forty days after the death of such intestate, it shall be lawful for the ordinary or the surrogate to grant letters of administration on such decedent's estate to any fit person or persons applying therefor." *P. L. 1898 p. 724.*

By rule 1 of the orphans court made by the Ordinary, pursuant to section 194 of the Orphans Court act (*P. L. 1898 p. 788*), it is prescribed, *inter alia,* that

"where application for administration is made by any person other than the next of kin or party first entitled, or by one of several equally entitled to receive letters of administration, the person making such application shall produce to the surrogate the renunciation and request of the persons so entitled, that letters be issued according to the application, or proof that at least ten days' notice has been given to the next of kin or parties by law entitled to such administration, if any, of such application; which application, and the renunciation and request, if any, shall be recorded in a book to be kept for that person."

By rule 2 it is prescribed that if

"the next of kin of any person dying intestate shall not apply for administration for forty days from the death of the intestate, the surrogate may grant letters testamentary or letters of administration, as the case may be, to any fit person who will accept the same, first giving at least ten days' notice to the heirs, widow or next of kin of such deceased, or to those of them whose residence or address he can ascertain, of his intention so to do; which notice may be sent by mail, and a copy thereof shall be by him recorded upon the granting of such letters."

These rules are as binding as the statute, must be complied with, and a valid grant of administration cannot be made without such compliance. *Gans* v. *Dabergott, 40 N. J. Eq. (13 Stew.) 184, 187; Sayre* v. *Sayre, 48 N. J. Eq. (3 Dick.) 267, 269.*

The next of kin of the decedent was his father, and it appears that as to him no requirement of either rules 1 or 2 was observed; there was no renunciation on his part or request by him that letters issue to Herzich or proof of ten days' notice given to him of Herzich's application as required by rule 1, nor was any notice mailed as required by rule 2. The father's address was given

by the applicant in his petition, and it cannot be asserted that it was not known.

The rule of the surrogate that administration will not be committed to a non-resident cannot justify failure to comply with the requirements of the above rules.

It was urged by the respondent that the letter which it was alleged the father of Wicko sent to Clarich, the cousin, justified the grant of letters to Herzich, but I cannot agree to this. There was no proof of the contents of that letter. It was alleged that Clarich sent it to the Austrian consul, and, upon demand being made for its production, Herzich, who testified that he saw the letter, but nowhere that he had read it, declared that neither of the letters produced was the one which Clarich had shown him. He did not testify as to its contents; the nearest that he came to it being in the early part of his cross-examination, when, having answered that he had no request from Jerolimo Sinovcic that he be appointed administrator, and having further answered "No" to the question whether he had given Jerolimo any notice that he would apply to the surrogate to take charge of the estate, he added, "This here cousin of his, he got a letter to do it, then he" (no doubt meaning the cousin) "wanted me to take it for him, Anton Clarich." It is probable that his sole knowledge of the contents of the alleged letter was the statement of Clarich. I am quite sure that it was not produced before the surrogate, and the evidence with regard to it is too uncertain, even were I convinced that it could have any bearing upon the case, for me to regard it. If Jerolimo wrote it and it contained the request that Clarich should take charge of Wicko's estate, its production would not justify the granting of letters to Herzich, for the rule of the court is that the request must be that letters be issued to the applicant, in this instance, to Herzich. If the letter was a warrant for Clarich to take charge of the estate, it surely was not a warrant for him to have any person he might fancy to take charge of it.

On the part of the respondent, it was contended that Jerolimo Sinovcic had ratified the action and conduct of the administrator, and that he and the consul-general are thereby precluded from appealing from the grant of letters. In support of this conten-

tion the administrator relies upon certain letters lately received from Jerolimo.

Wicko's death was caused by reason of injuries sustained while working for the New York Shipbuilding Company, in its yard at Camden, and I think it fairly inferable, from the evidence that Clarich approached his friend Herzich to go with him to the company to make some sort of a settlement, that the company agreed to settle, and that Clarich, Herzich and Clinton C. Garrett, an employe of the company, went to the surrogate's office where letters were issued to Herzich; that the settlement was made; that Herzich eventually sent, or agreed to send, to Jerolimo $471 thereof, and that the letters from Jerolimo were in reference thereto. In one he writes, "I am perfectly satisfied what you have done for my dead son, Wicko Sinovcic. Everything is all right for me and for my wife." I give the translation by the witness Gavanstey. This, of course, relates to the settlement, the fairness and justice whereof is a matter of no concern at this time. It may have been just and fair, it may not have been. The contents of the letter from Herzich, in response to which Jerolimo wrote the above, are not known to the court. Jerolimo may not have known that Herzich was administrator, and may have thought that, acting as a friend, he had secured this money. I do not feel free to regard this letter as a ratification of Herzich's appointment as administrator, or, at the best, to regard it as more than satisfaction at the receipt of the $471, collected by Herzich, and his action in that respect. I cannot construe it as a ratification of this appointment as administrator. There was some doubt as to the translation of a certain portion of Jerolimo's letter; Herzich at first translated it. "Here I send you letter like you did write to me," and later, when a witness named Gavansky translated it, "I send you a letter answer to your letter," adopted the latter version. He subsequently testified that he had not written to Jerolimo just what he was to say, but the matter is somewhat involved, and could have been cleared up by the production of a copy of Herzich's letter. Herzich may not have written him just what to write in response, still he may have asked him whether he regarded the settlement as satisfactory, and

that may have called forth the answer. I am not free to interpret this letter other than as I have heretofore stated.

My conclusion, therefore, is that the grant of letters to Herzich was without warrant in law, and that the same should be revoked.

The petition of appeal prays that letters of administration may be granted to the petitioners, or to one of them, or to some other fit or proper person. The petitioners are Jerolimo Sinovcic and Alexander de Nuber, the consul-general. Jerolimo is a foreigner, living in Austria, and, of course, it would be improper to grant them to him. I can see no reason why they should not be granted to the consul-general conformably with the statutes of this state. I will, therefore, sign an order directing his appointment upon his executing a bond with approved security in the sum of $2,000.

*Messrs. Gaskill & Gaskill,* for the appellant.

*Messrs. Wilson & Carr,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed for the reasons stated in the opinion filed in the Camden county orphans court by Judge Joline.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, VROOM, CONGDON, WHITE, TREACY—15.

*For reversal*—None.