BERGEN COUNTY SURROGATE'S COURT.

IN RE ESTATE OF JOSEPH JORDAN VEALIE, DECEASED.

Decided July 10, 1944.

For the petitioner, *Weinberger & Weinberger* (by *Joseph J. Weinberger*).

For the respondent, *Walter P. Back*.

PACHELLA, SURROGATE. Joseph Jordan Vealie, late resident of the Township of Teaneck, Bergen County, departed this life intestate at sea on the 19th day of February, 1942.

On June 13th, 1942, Helen Mae Vealie of Bergenfield, who was no relative of the intestate, applied to the surrogate of Bergen County for letters of administration as a creditor of the deceased, alleging that the value of the estate did not exceed $100, setting forth that he was indebted to her for care, maintenance and education in the amount of $4,200 and that there were no known next of kin. She made an affidavit setting forth that the decedent during his lifetime had stated to her, from time to time, that he had no next of kin. On the strength of her verified petition and affidavit, the late Surrogate Hopper, on June 24th, 1942, signed an order granting administration of said estate to Mrs. Vealie.

On May 31st, 1944, Joseph Giordano, father of the intestate, applied to the present surrogate for a rule to show cause why the letters of administration granted to Mrs. Vealie, should not be revoked. In his petition Mr. Giordano set forth that in addition to himself, the intestate was survived by a brother and two sisters and that no notice of the application for letters of administration had been served upon him or on any of his children. He alleged fraud on the part of Mrs. Vealie in procuring the letters of administration and stated that she had collected $5,000 of life insurance which was payable to the estate of the intestate and to which petitioner and his children are justly entitled as next of kin. A rule to show cause was thereupon granted by the surrogate and testimony was taken by him on the return day of the rule.

The testimony shows that the intestate, whose original name was Joseph Giordano, was born in New York City on April 10th, 1918. His mother died when he was seven months old. His father was remarried in 1922 and the second wife died in 1933. About this time the intestate began to attend a Sunday school in New York and was befriended by Mrs. Vealie, who was a teacher there. She took an interest in the boy, befriended him and encouraged him to call at the Vealie home which the boy did frequently during the next five years. In 1938 the father was remarried again. The father and his

wife established a new residence and Joseph resided for a short time with his older brother and two sisters. Shortly thereafter Joseph, who was then twenty, made his permanent home with the Vealies who later moved to Bergen County. There is no evidence that this was done with the father's knowledge or consent. At the hearing the father denied that the son had left the home of his brother and sisters, but insisted that the boy continued to live with them, except when he was away at sea. I am convinced from the testimony that the boy did make his permanent home with the Vealies.

Although the boy was never legally adopted by Mr. and Mrs. Vealie, he called her "mother" and subsequently legally changed his name to Joseph Jordan Vealie. In his petition for leave to change his name shortly before his death, the intestate alleged that "a few years previously, his father had abandoned his mother and has never been heard from since." He also alleged that "James Walter Vealie and his wife, Helen Mae Vealie, took petitioner into their home and raised him as if he were their own son." The petition also contains a statement that he had no creditors and had never defaulted in the payment of any obligations. Mrs. Vealie, however, testified that she had a verbal agreement with the intestate that she and Mr. Vealie would be reimbursed for whatever they spent on intestate's behalf, when he was able to do so.

At the time of intestate's death he had been employed as an oiler on the ship *Lake Osweya*. It was his custom to procure insurance for each trip and he designated Mrs. Vealie as beneficiary in all of these policies, except the last one, in the amount of $5,000, which is payable to his estate. The ship sailed on February 17th, 1942, on short notice, with a cargo of explosives from New York to Iceland, via Halifax, and was lost through enemy action. In her application for administration, Mrs. Vealie stated that as near as she could ascertain, the value of the personal property of which the intestate died possessed, did not exceed the sum of $100. Although, she stated that he was indebted to her for care, maintenance and education in the amount of $4,200, she did not set forth the insurance policy as an asset, and it has since been paid to her as administratrix.

The respondent has gone to great length to show the affection that existed between the intestate and the Vealies. The letters from him to Mrs. Vealie show that the boy had deep affection for both Mr. and Mrs. Vealie and was deeply grateful to them for all they had done for him. I am convinced that the Vealies were equally fond of the boy. The rule, however, cannot be determined by ascertaining whether the parent or the Vealies had greater affection for the boy. Our statutes and the rules of the Orphans Court must govern.

At the outset of the hearing on the return of the rule, the proctor for the respondent moved to dismiss the rule to show cause on the ground that the petition upon which the rule was granted was sworn to before the proctor for the petitioner, contrary to rule 62 of the rules of the Orphans Courts, which provides that:

"No proctor or counselor shall take any affidavit for use in any proceedings before the Orphans Court or surrogate in which he or any firm of which he is a member appears as proctor or counsel of record."

I am of the opinion that this is an irregularity which can be waived by the court. Rule 78 of the Orphans Court provides that the rules "may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that strict adherence to them will work surprise or injustice."

Our courts have held that although it is irregular for a party's solicitor of record or counsel to take his affidavit to be used in a judicial proceeding, this rule is one of judicial policy and may be waived by the court. *In re Ungaro's Will*, 88 *N. J. Eq.* 25; 102 *Atl. Rep.* 244; *State* v. *Bergen*, 24 *N. J. L.* 548; *Becker* v. *Kelsey et al.*, 9 *N. J. Mis. R* 1265; 157 *Atl Rep.* 177.

The question now arises as to whether the surrogate may re-open the administration proceedings and if the facts warrant, vacate the order granting administration of the decedent's estate to Mrs. Vealie. I am of the opinion that the power of the surrogate to re-open the proceedings and to revoke letters of administration for just cause is now beyond dispute.

"The surrogates of the several counties shall have power

and authority to open, vacate, modify or set aside or to enter as of a former time a decree or order made in their court, or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error or other sufficient cause, but only in like case and in the same manner as a court of record and of general jurisdiction exercises the same powers." *R. S.* 2 :31–4 ; *N. J. S. A.* 2 :31–4. *In re Kellner's Estate,* 121 *N. J. Eq.* 243 ; 189 *Atl. Rep.* 91 ; *In re Collin's Estate,* 11 *N. J. Mis. R.* 233 ; 165 *Atl. Rep.* 285 ; *In re Crociani's Estate,* 11 *N. J. Mis. R.* 828 ; 166 *Atl. Rep.* 626.

"The statute (*R. S.* 2 :31–4 ; *N. J. S. A.* 2 :31–4) does not limit the time within which the surrogate may vacate its decree for the causes mentioned." *Seaboard Trust Co.* v. *Topken,* 130 *N. J. Eq.* 46 ; 20 *Atl. Rep.* (2d) 709.

We now come to the question of notice to the next of kin. of application for letters of administration.

Mrs. Vealie in her petition to the surrogate for letters of· administration alleged that she was not related by blood or marriage to the intestate; that there were no known next of kin, and that the decedent in his lifetime had stated to her from time to time that "he had no father, mother, children, grandchildren, or other descendants, no brother, sister, or other living heirs or next of kin." At the hearing upon the return of the rule she testified that she attended the graduation exercises of the trade school from which the boy was graduated and in answer to the question, "And what did he [the intestate] say to you?" she replied: "He thanked me for coming, and said 'I am so glad you came. No one else is here,' and he was very hurt." She also testified that subsequently the intestate and herself on two occasions went to see his grandmother, but she died since. Mrs. Vealie also testified that she met some of his friends, but there is no evidence that she made inquiry of them for intestate's next of kin.

*R. S.* 3 :7–6 ; *N. J. S. A.* 3 :7–6, provides that: "If any person dies intestate, administration of the personal estate of such intestate shall be granted to the surviving spouse of such intestate, if he or she will accept the same, and if there be no such person, then to the next of kin of such intestate, or

some of them, if they or any of them will accept the same, and if none of them will accept the same, then to such other proper person as will accept the same.

"If such intestate leaves no relations justly entitled to the administration of his personal estate, or if his next of kin shall not claim the administration within forty days after the death of such intestate, the ordinary or surrogate may grant letters of administration to any fit person applying therefor."

Rule 5 of the Orphans Courts provides that in all cases where application for letters of administration is made subsequent to the space of forty days after the death of an intestate, the applicant shall give at least ten days' notice to the persons entitled to administration who are residents of the State of New Jersey, and not less than ten nor more than sixty days' notice to those who reside without the State of New Jersey, or to those of them whose residences or addresses he can ascertain, of his intention to make such application.

Rule 22 of the Orphans Courts provides for the nature of inquiry for absent next of kin or other persons entitled to notice of application for letters of administration.

As our Court of Errors and Appeals stated in *In re Sinovcic's Estate,* 80 *N. J. Eq.* 260; 86 *Atl. Rep.* 917: "These rules are as binding as the statute, must be complied with, and a valid grant of administration cannot be made without such compliance."

No inquiry for next of kin was made by Mrs. Vealie, or her proctor, presumably because it was believed that the intestate had no next of kin. I do not consider it necessary for me to determine whether or not the administratrix was sincere in her belief. The fact remains that the father, brother and two sisters survived the intestate, that they were equally entitled to administration, and that they received no notice of her application for letters of administration. In the case *sub judice* notice to the next of kin was of vital importance because the application for letters of administration was made by a creditor. This surrogate does not favor the appointment of a creditor as administrator for it places the creditor in the position of passing on the validity of his own claim. A better practice under such circumstances,

would be to appoint a disinterested person. In the instant case the administrator, as a creditor of the estate, has claimed a debt owing to her by the decedent, the payment of which would require almost the entire assets of the estate. Such a claim should be passed upon by some one other than the claimant.

The right of administration grows out of the right to distribution, and those therefore, who are entitled to the intestate's clear estate, have an exclusive primary right to administration. *Cramer* v. *Sharp,* 49 *N. J. Eq.* 558; 24 *Atl. Rep.* 962.

Administration of an estate should be committed to those who are the ultimate or residuary beneficiaries, that is, to those to whom the residue of the estate will go, when the administration is completed. *Donahay* v. *Hall,* 45 *N. J. Eq.* 720; 18 *Atl. Rep.* 163; *In re Tenneson's Estate,* 18 *N. J. Mis. R.* 245; 12 *Atl. Rep.* (2*d*) 363.

Letters of administration cannot be granted to a stranger, unless the next of kin have consented to the grant or unless they have been given notice or have been cited. *Rinehart* v. *Rinehart,* 27 *N. J. Eq.* 475; *Gans* v. *Dabergott,* 40 *Id.* 184; *Sayre* v. *Sayre,* 48 *Id.* 267; 22 *Atl. Rep.* 198..

"Where letters of administration have been issued by this [Prerogative] court without notice to, and in disregard of the rights of, a person having an interest and entitled to be heard therein, such action having been the result of factual misrepresentation to this court by the *ex parte* applicant or one identified in interest with him, whether such misrepresentation was the result of fraud or of mistake, this court will re-open the proceeding, on the application of the person whose rights were so disregarded; and where, upon such re-opening it appears that the latter has a better right to such administration, will revoke the prior letters and issue substitutionary letters to him." *In re Fisher's Estate,* 118 *N. J. Eq.* 599; 180 *Atl. Rep.* 633.

The proceedings on the application for letters of administration of this estate are accordingly re-opened and the letters of administration granted to Helen Mae Vealie of the goods, chattels and credits of Joseph J. Vealie are revoked.