The main objectives sought by the bill of complaint are to traverse, or supersede, an inquisition of lunacy, to set aside the sale of real and personal property, a reconveyance of the same to the complainant, a discovery, and an accounting.
On October 26th, 1943, complainant was committed to the New Jersey State Hospital at Trenton; in May, 1944, having been adjudged a mental incompetent through proceedings in this court, a certified copy of the proceedings was transmitted to the Orphans Court of Warren County, and that court, on May 24th, 1944, appointed the defendant guardian of the complainant. On or about July 12th, 1944, complainant was released from the New Jersey State Hospital at Trenton, and took up his residence with Raymond Butterwick in Asbury, Warren County, with whom he has since resided.
The defendant sold complainant's personal effects, household goods, stock and equipment on June 12th, 1944, and his real estate on August 23d 1944. On the 1st day of October, 1944, it filed an account in the Warren County Orphans Court. In that proceeding it charged itself with the sum of $6,850.72, and prayed allowance for the sum of $3,281.62, leaving a balance in its hands as of the date of the accounting, of $3,569.10. *Page 208 
It is alleged that the account disclosed that the defendant reduced complainant's estate by approximately fifty per cent. during the four months that it managed it.
The bill recites that the judge of the Warren County Orphans Court, who appointed the defendant the complainant's guardian, was and now is president of the defendant company, one of its stockholders, and its general counsel.
It is charged that many valuable items of personal property were removed from complainant's home, either prior to the appointment of the defendant as his guardian, or subsequent thereto, and that defendant has been so informed, and that it has taken no action to recover the property, or its value.
Complainant charges that no guardian ad litem was appointed for him in the proceedings in the Warren County Orphans Court wherein the defendant was appointed his guardian.
The bill seeks to void the order of the Warren County Orphans Court appointing the defendant guardian of complainant, and the sale by it of his real estate and personal effects, household goods, stock and equipment.
The complainant produced several of his neighbors and doctors who testified to complainant's habits and conduct as being proper and normal. They said he managed his affairs in a reasonable and husbandlike manner, and that he maintained a favorable reputation among his neighbors. Several of the lay witnesses said that they have employed him since his release from the State Hospital, and that they found him competent, able and willing to perform such duties as they imposed upon him; and that he showed no signs of instability.
The doctors in effect testified that complainant appeared to be well oriented as to time, place and person, and that he displayed no restlessness or undue tension during his examination by them; and that he sat quietly during their interviews with him, and that he appeared to be co-operative.
They said that his memory appeared to be intact, and that ordinary mathematical problems were correctly solved by him; and that their examinations failed to disclose any psychotic tendencies. In their opinion, he was competent to manage himself and his affairs. *Page 209 
I am satisfied that the commission should be superseded, and complainant's estate restored to him pursuant to the provisions of R.S. 3:7-46, which in part provides as follows:
"The Chancellor may supersede a commission and all proceedings thereon and restore the estate of the mental incompetent to him if, upon his petition, or the petition of some person for him, the chancellor, upon taking proof, is satisfied that he is restored to sound reason and is fit to govern himself and manage his affairs, * * *."
In the proceedings before the Warren County Orphans Court on May 24th, 1944, wherein the defendant was appointed guardian of the complainant, notice was not given to complainant of the application. Exhibit C-1 is a certified copy of the documents on record in the Warren County surrogate's office relating to the appointment of a guardian for the complainant. It contains, among other records, the petition for the appointment of a guardian, and a petition for an order designating method of service, also the order of the Warren County Orphans Court of May 5th, 1944, directing service of notice. The latter order gives no direction as to service upon the complainant. The notice and the proof of service of notice, bear no reference to him.
It does not appear of record that the complainant was given notice of the application. Chancellor Walker in In re Martin,86 N.J. Eq. 265; 98 Atl. Rep. 510, among other things, said:
"It is fundamental that in every proceeding of a judicial nature it is essential that the person whose rights are to be effected should be a party to the proceeding and have an opportunity of making a defense.
"This rule was declared with great emphasis and comprehensiveness by Chief-Justice Green in Hess v. Cole,23 N.J. Law 116 (at p. 124). There a decree of the Orphans Court, setting off dower, was declared void, upon the ground that a party whose interests were affected by it had not been served with notice of the intended application for the appointment of commissioners, as required by the statute in that behalf. And there the Chief-Justice was not content to rest the decision of the Supreme Court upon the failure to give notice to *Page 210 
the party to be affected by the intended application, as required by the express provisions of the statute, but went further, and rested the decision upon the broad ground of the clearest principles of justice, irrespective of the statutory requirements, and irrespective of a summary way of proceeding, or otherwise requiring the giving of such notice, saying (at p.124):
"`Every common law record shows upon its face that the defendant was either in custody, or was summoned or attached to answer to the action. And, however inconvenient may have been the strictness with which the principle was applied, and the extent to which it was enforced in ancient common law proceedings, the principle itself is by no means peculiar to the common law. It pervades in fact every code of law and every well-regulated system for the administration of justice.
"`The time and the manner of the notice, whether it shall be actual or constructive, whether personal or otherwise, are subjects of legislative control, founded upon considerations of policy or expediency. There are modes prescribed by statutes arising from the necessity of the case, in which judgments may be recovered without notice to the defendant. But in the absence of statutory provisions it is an inflexible rule of law, as well as the clear dictate of justice, that no man shall be deprived of his rights, either of person or property, without an opportunity of being heard. It is not enough that the court have jurisdiction of the subject-matter; they must also have jurisdiction of the person. In every proceeding of a judicial nature it is essential that the person whose rights are to be affected should be a party to the proceeding, and have an opportunity of making defense.'
"And, further continuing as to the effect of the want of such opportunity, the Chief-Justice said (at p. 125):
"`As it appears expressly by the plea that no notice was given to the plaintiff, William Hess, of the application to the Orphans Court, as it does not appear that he became in any way a party to those proceedings, the decree of the Orphans Court, so far at least as it operates upon his rights, is null and void.'" *Page 211 
See In re Braune's Estate, 103 Atl. Rep. 412; In re Cornine,16 N.J. Mis. R. 231.
When the order of May 24th, 1944, of the Warren County Orphans Court appointing the defendant as guardian of the complainant as aforesaid, was entered, no guardian ad litem was appointed for complainant in that proceeding. That was a fatal omission.Orphans Court Rule 57 provides that:
"In any proceeding wherein a minor or person non composmentis shall be cited or is a respondent, a guardian ad litem
shall be appointed. In any proceeding initiated on behalf of a minor or a person non compos mentis it shall be prosecuted by a next friend. In all proceedings wherein a minor or a person noncompos mentis is a party in interest, before proceeding to a hearing of the cause the court shall determine whether such party in interest shall be represented either by a guardian ad litem
or a next friend and shall not proceed until the appropriate appointment shall have been made."
Orphans Court Rule 59 provides that where no application is made on behalf of an incompetent person, the party instituting the proceeding may apply for the appointment of a guardian adlitem. The rule provides:
"If no application shall be made by or on behalf of the minor or incompetent party within five days after the service upon him of the citation or other authoritative command of the court to appear, c., the Orphans Court may, on application on behalf of the party instituting or prosecuting the proceedings, by its order assign a guardian ad litem for said minor or incompetent party; but ten days' notice of such application must be given to the minor, if of the age of fourteen years and resident within this state, or, if under that age or not a resident in this state, to his guardian appointed by the Surrogate or Orphans Court, if any there be, if no such guardian, to the father of such minor, or, if no father, then to the mother, or, if no mother, to the person standing in loco parentis to the minor, provided such guardian, father or mother, c., be resident in this state, which notice may be served at the time of service of the process of citation or at any time thereafter. If such guardian, father or mother, c., be not resident in this state, such notice shall be given as the Court may by order direct. In the case of an incompetent person, ten days' notice of such application shall be served upon him and also upon his guardian appointed by the Orphans Court, if any there be, and if no such guardian, then upon such persons as the Court may by order direct."
If no application is made by or on behalf of the incompetent, or on behalf of the party instituting the proceeding, *Page 212 
it becomes the duty of the court on its own motion to appoint a guardian ad litem for the incompetent. See Orphans Court Rule60, which provides that:
"If no application is made as provided in the two next preceding rules, the Court on its own motion shall appoint a guardian ad litem or next friend for such minor or incompetent."
I do not agree with the defendant's argument that under the provisions of Orphans Court Rule 19, notice of the application for guardianship of an incompetent need not be given to the incompetent if the Orphans Court so directs. Orphans Court Rule19 provides that:
"Where application for letters of guardianship of an incompetent is made, notice thereof shall be given to such person or persons, and in such manner as the Surrogate or Orphans Court may by order direct."
The Chancellor in his capacity as Ordinary promulgates theOrphans Court Rules pursuant to the provisions of R.S.2:30-1, which provides that:
"The Ordinary shall, from time to time, make such rules and orders to regulate the pleadings and practice in the prerogative court and in the orphans court as will, in his judgment, render the practice and proceedings therein simple, expeditious and efficient, and prevent unnecessary costs and delay, for which purposes he shall have full power to change and regulate the pleadings and practice."
Such rules have the force and effect of statutory law. See Inre Sinovcic, 80 N.J. Eq. 260; 86 Atl. Rep. 917.
The complainant contends that the order of the Orphans Court of Warren County, entered on May 24th, 1944, appointing defendant guardian of complainant, was void because the judge, who was sitting in said court and signed the order of appointment was disqualified. I believe there is merit in the contention. At the time of the proceedings in the Orphans Court, the judge of that court, as hereinabove alleged, was a stockholder in the defendant corporation, was its general counsel, and its president. In those circumstances, the provisions of Rule 75 of the Orphans Court
fit into the situation; it provides that: *Page 213 
"In cases not covered by these rules, the practice, procedure and rules of the Court of Chancery and the Prerogative Court shall, in so far as applicable, apply to the Orphans Court in the exercise of powers within the sphere of its jurisdiction."
Prerogative Court Rule 100 is identical with the above stated rule.
The prohibitions expressed in Rule 297 of the Court ofChancery apply to the aforesaid judge of the Orphans Court.
The rule reads:
"No cause or matter shall be entertained, heard or determined by any vice chancellor, advisory master or other officer of the court who has any personal interest therein, or is of close kin to or has any important business relations with any party thereto or any solicitor or counsel of any party.
"Information as to the actual, or possible, existence of any reason why any particular vice chancellor, advisory master or other officer of the court would or might be disqualified hereunder shall be given to the Chancellor or such vice chancellor, advisory master or other officer of the court;
"(a) at the time of presenting such cause, if under rules of general reference; or
"(b) to the Chancellor at the time of the application for the order of reference; or
"(c) immediately upon presentation of such order or cause to the vice chancellor, advisory master or other officer of the court to whom the cause is referred; or
"(d) as soon after the time fixed by subdivision c as the existence of such disqualification shall become known to the vice chancellor, advisory master or other officer of the court or any counsel or party to the cause."
Since the Prerogative Court, or the Orphans Court, has no rule similar to Chancery Rule 297, the latter rule therefore governs in the Orphans Court. See, also, R.S. 2:26-193.
In In re Hague, 103 N.J. Eq. 505; 143 Atl. Rep. 836, the court, among other things, said:
"* * * the interest which disqualifies a judge is a direct pecuniary one, or one which involves some individual right or prejudice in the subject-matter of the litigation."
See, also, 33 Corp. Jur. 991-992 § 134, where the following is expressed:
"Under the civil and canon law a judge was disqualified by interest in a cause, and this rule was recognized as existing under the common *Page 214 
law of England by some of its early commentators, but denied by others. It is now a universally recognized principle that a person cannot be judge of his own cause; this is a maxim of law; and it applies in all cases when judicial functions are to be exercised. Hence, subject to some limitations as to the nature or character of the interest, any interest in the subject-matter of a suit will disqualify a judge to preside on the trial thereof. So it is generally declared by the constitutions and statutes, it being within the power of the legislature to do so. And it is beyond the scope of legislative authority to confer upon a party to a controversy or one interested therein the power to act as judge in such cause. However broad the grant of judicial power may be, this rule remains operative, and gives rise to a tacit exception from the general words of the grant."
And again in section 139, page 995:
"It is a generally accepted rule that a stockholder or director in a corporation cannot sit as judge in an action in which such corporation is interested, such interest being sufficient to disqualify him. Such interest must, however, be a present interest, and it must be real or certain, and not merely possible or contingent. A judge is not disqualified by reason of having once owned stock in the corporation which was disposed of before the commencement of the proceedings, although he may be liable to be sued for ultra vires acts done while a director of the corporation, nor is he disqualified by having been a subscriber for stock in the corporation, where his subscription was cancelled before delivery of the certificate; nor by the fact that he and a party to the suit pending before him are stockholders in a corporation, the interests of which are in no way involved in the litigation; nor by the fact that the corporation is a simple contract creditor of one of the parties to the suit. Under the circumstances of particular cases, a judge who has owned stock in the corporation which was disposed of before the commencement of the proceeding, although not technically disqualified, should decline to act. The facts that the judge tried the cause with the consent and at the request of counsel and disposed of his corporate stock before rendering judgment will not operate to qualify him and validate the judgment."
A similar statement of the law appears in 30 Am. Jur. 771-772§ 56:
"It is an ancient maxim of the law that no man ought to be a judge in his own cause, a maxim which appeals with such force to one's sense of justice that it is said by Lord Coke to be a natural right so inflexible that an act of Parliament seeking to subvert it would be declared void; and since a case wherein a judge is interested is one wherein, to an extent and in effect, the case becomes his own, it has been held, accordingly, from the earliest times that a judge is disqualified from acting in a case in which he has an interest. This *Page 215 
rule is embodied in the Constitutions and statutes of many of the states which expressly provide that judges shall not sit in cases in which they are interested. It is not competent for the legislature, even, without the aid of some constitutional provision, to permit a judge who is interested to sit at the trial of a cause, and a statute authorizing him to do so is unconstitutional and void as a denial of due process of law."
Section 60, at page 774:
"A stockholder in a private corporation is disqualified by interest to sit as a judge in a cause to which the company is a party, or in which its interests are directly and immediately involved, as in a suit which involves the validity of bonds owned by the corporation, or where it holds an overdue mortgage on property sought to be taken under the power of eminent domain. However, the interest of the corporation in the action may be too remote to work a disqualification. Since the interest which disqualifies is a direct and immediate interest in the result of the action, a judge is not disqualified where he disposed of all of his stock before commencement of the suit in which his right to preside is challenged, or where he cancelled a previous stock subscription and no certificate of stock was ever delivered to him. Furthermore, there is no presumption that his liability as a stockholder for the debts of the corporation had accrued with respect to a controversy subsequently brought before him, at the time that he disposed of his stock, so as to disqualify him from sitting in the cause."
And section 67, at page 778:
"A judge who is interested in a decedent's estate is disqualified to pass on any matter concerning the estate in which he has a direct and substantial interest."
The complainant charges that the sale of his personal property, household goods, and effects by the defendant was void because it was hasty, unnecessary and without sanction of the Orphans Court. The defendant qualified as guardian on June 6th, 1944. The sale of these effects took place on June 12th, 1944. Complainant's income from his property seemed to have been sufficient to maintain him, and, presumably, with his share-cropping plans would have so continued while he was in the State Hospital.
R.S. 3:7-41 provides in part that:
"* * * The guardian so appointed shall have the care and safekeeping of the mental incompetent and his real and personal property so that the mental incompetent may live and be competently supported *Page 216 
and maintained by and out of his personal property and the profits of his real estate, * * *."
Before selling any part of complainant's personal property, it was incumbent upon the defendant to apply to the Warren County Orphans Court for leave to do so. This it failed to do. R.S.3:7-49.3 provides:
"Such guardian may expend any portion of such personal property as heretofore, and may also expend any portion thereof to preserve or protect any interest in property, real or personal, vested in such ward and to suitably maintain the dependents of such ward, as may be approved by and upon the written order of such ordinary or orphans court; and shall be authorized to invest such personal property in such manner and in such securities as are allowed by law or are approved by the court."
In Hoffman v. Kahn, 119 N.J. Eq. 171; 181 Atl. Rep. 527,
the court, among other things, said:
"Although the guardian of a lunatic has no title to the property of his ward either in trust or otherwise, yet he is caretaker of the estate. Cooper v. Wallace, 55 N.J. Eq. 192.
The lunatic's property within the state becomes a fund under control of the Orphans Court."
The complainant questions the accounting filed by the defendant in the Warren County Orphans Court (Exhibit C-3). The defendant itemized 480 separate items of personal property belonging to complainant (Exhibit C-2). It charges itself with the gross amount of the inventory and appraisement, and charged itself with the increase thereon on the sale of the complainant's property. It contains the gross sum realized for the complainant's property, but does not disclose what price was realized for each item, nor whether every item was sold and accounted for by the defendant.
Complainant further says there is no statement of changes attached to the accounting as required by Orphans Court Rule27, which reads as follows:
"In the settlement of the accounts of executors, administrators, guardians or trustees, the accountant shall annex to the account a full statement or list of the securities, investments and assets of which the balance of the estate in his hands consists, which shall also set *Page 217 
forth the inventory value and the value as of the day the account shall have been drawn, and a statement of all changes made in the securities, investments and assets since the filing of the inventory or since the last settlement. The accountant shall also set forth with particularity where the securities, investments and assets are deposited or kept and in what name."
The failure to include a statement of changes in investments in an accounting is a valid ground for exception thereto. In reCooke, 96 N.J. Eq. 589; 125 Atl. Rep. 332; affirmed, 99 N.J. Eq. 423; 133 Atl. Rep. 918, wherein the court said:
"In rule 21, the rule is pre-emptory, that the trustee must annex the list of securities as well as a statement of the changes in the securities. The purpose of this amendment, as I see it, was to give the fullest information to the beneficiaries of the dealings of the trustee in carrying out its trust. The trustee can probably explain the apparent discrepancies in the Sharpe and Zax mortgages; and if the Orphans Court had directed the trustee to comply with the rule, and the beneficiaries on such compliance were dissatisfied, they might then address their exceptions to any irregularity that might then appear. But, in the absence of such compliance, the exception was proper and sufficient; and the decree of the Orphans Court in dismissing this exception was erroneous."
The complainant charges that no exception could be filed to the accounting because it lacked a statement of changes and no proof could be given to support the exception, because of the lack. The accounting, however, was an intermediate accounting, and not a final accounting. The statute relating thereto, R.S. 3:10-14
reads as follows:
"A guardian's intermediate account shall, after being audited and stated by the register or surrogate and reported to the ordinary or orphans court, and after notice given to, or citation duly served on, interested parties, be examined by the court. If the court finds the account properly and fairly stated and the articles thereof supported and justified by the vouchers, the account shall be passed.
"If any article of such account be at any time afterwards excepted to by the ward or his representative or other party interested, he must prove or show falsity or injustice thereof unless notice on his behalf shall have been given at the time of passing the account, that such article would be excepted to and a memorandum of that notice shall have been entered of record or entry thereof requested." *Page 218 
The effect of the statute is to permit the court to pass the account if it finds the account properly and fairly stated. All that the complainant could do, was to file exceptions, have them noted of record and then wait for a final accounting, at which time there could be a hearing thereon. If, as and when a final accounting were allowed, it would then be governed by R.S.3:10-15, which provides that:
"The court wherein the account of an executor, administrator or trustee, or the final account of a guardian, is reported shall examine the account and the vouchers and receipts for payments and disbursements claimed therein, and, if the same is found to be correct and no exception is made to the report of the register or surrogate or other auditing officer, the court shall, on proof that notice of settlement has been given and advertised or that in cases in which section 3:10-12 of this title is applicable, the interested parties have been cited in the manner provided by this chapter, decree an allowance of the account as stated, except that, when it appears that there is a balance due the accountant, the decree for allowance of the account shall not be entered until such time as the court may direct."
See, also, R.S. 3:10-16, which provides that:
"If a person interested in the settlement of the account of a fiduciary contemplated by section 3:10-15 of this title appears in person or by attorney and excepts thereto, the court shall hear proofs and allegations at a time appointed and may correct mistakes or errors therein as reported or may refer the same to the surrogate, an auditor or master in chancery, to examine and restate the account, and after hearing parties and witnesses, to make report to the court for confirmation and allowance.
"The court to which an account is reported for allowance, or the surrogate, auditor or master to whom an account is referred may, at the instance of a party interested therein or by their own proper authority, examine the accountant, on oath, concerning the truth and fairness of the account."
And R.S. 3:10-5, which in part reads as follows:
"Except as otherwise provided by law, a fiduciary appointed by an orphans court or surrogate shall render and settle his account in the surrogate's office within one year after his appointment or within thirty days after such year has expired, unless the court for good cause shown, allow further time therefor."
There is no doubt that this court has jurisdiction to require the defendant herein to account, notwithstanding the fact that proceedings to the same effect are pending in the Orphans Court at the time this court acquired jurisdiction. *Page 219 
The complainant makes several serious charges against the defendant in the instant case, and he asks this court to take complete control of him and his estate, and permit discovery proceedings to be taken. Such relief could not be granted in the Warren County Orphans Court. This court can take complete jurisdiction and afford relief. See Beatty v. Wunschel,123 N.J. Eq. 192; 196 Atl. Rep. 456, wherein the court, among other things, said:
"`The defendants cannot successfully challenge the jurisdiction of this court. Equity has jurisdiction to compel an administratrix to settle her account, for discovery of assets, and for other equitable relief, even though the Orphans Court has entertained an account, where special circumstances are shown.Salter et al. v. Williamson, Adm'r, 2 N.J. Eq. 480; Field v.Field, 61 N.J. Eq. 154; Nelson v. Errickson, 81 N.J. Eq. 226;Filley v. Van Dyke, 75 N.J. Eq. 571; Vaiden v. Edson, 85 N.J. Eq. 184.
"`The bill, in my opinion, establishes abundant justification for intervention. In my judgment, the causes for complaint amply supply the necessary reasons which make it not only the right, but the duty of this court to take over the accounting from the Orphans Court. They involve questions which can only be settled in a court of equity, and which should be settled before any satisfactory accounting could be completed.
"`And where, as here, the defendants' answering affidavits do not meet the complainant's proofs, and it appears probable that complainant will prevail on final hearing, a preliminary injunction may issue (Ideal Laundry Co. v. Gugliemone,107 N.J. Eq. 108; Paragon Distributing Corp. v. ParagonLaboratories, Inc., 99 N.J. Eq. 224), and a receiver pendentelite will be appointed. Sobernheimer v. Wheeler, 45 N.J. Eq. 614; McCarter, Attorney-General v. Clavin, 72 N.J. Eq. 642.'"
I believe that the defendant should account in this court and that the relief prayed for in the bill should be granted. I shall advise a decree in accordance with the foregoing conclusions. *Page 220